UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIPPECANOE BEVERAGES, INC., | ) |
| Plaintiff | ) ) ) |
| v. | ) Cause No. 3:04-CV-346RM ) |
| HEINEKEN USA, INC. | ) ) |
| Defendant | ) |

OPINION AND ORDER

A dispute has arisen regarding the existence and eventual termination of a beer wholesale distribution contract between Tippecanoe Beverages, Inc. and Heineken USA, Inc.[1] Tippecanoe contends that Heineken violated Indiana's Beer Wholesaler Protection Statute by terminating its distribution contract without providing appropriate compensation. Heineken seeks summary judgment, maintaining that any oral agreement between the parties is too indefinite to be an enforceable contract and that even if the agreement is enforceable, Tippecanoe's claim for unlawful termination must fail because Heineken's status as a brewer renders Indiana's Beer Wholesaler Protection Statute inapplicable. The court finds Indiana's Beer Wholesaler Protection Statute inapplicable to the alleged contract between Tippecanoe and Heineken, and so grants Heineken's motion.

---

[1] Unless the context specifically indicates otherwise, the term "Heineken" refers to Heineken USA. "Heineken International," which is specifically referenced below, refers to the brewer of Heineken beer.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the non-movant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); see also Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events") quoting Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999).

FACTS

The court summarizes the facts in the light most favorable to Tippecanoe, the nonmoving party. Tippecanoe, an authorized wholesaler of alcoholic beverages in Indiana, was founded in the mid-1950's. Heineken is an importer and distributor of Heineken beer products in the United States. In the early 1960's, Tippecanoe's owner met with the district manager of Heineken's corporate predecessor to discuss an agreement by which Tippecanoe would become a wholesale distributor of Heineken products in Indiana. It was agreed that Tippecanoe would have the right to obtain and wholesale Heineken products in Indiana, but in return, would be expected to merchandise, advertise, and ensure the quality of Heineken products, as well as be of "good character," fully compensate Heineken for the products received, and file any necessary paperwork related to the sale of Heineken products.[2] The agreement was to be indefinite; Tippecanoe would be allowed to continue selling Heineken products as long as it continued to perform its obligation and Heineken was pleased with its performance as a wholesaler.

Tippecanoe began selling Heineken products, but wasn't purchasing directly from Heineken; as a sub-distributor wholesaler, Tippecanoe received Heineken products from Heineken wholesalers (direct distributors) higher up on the distribution chain. The parties dispute whether Heineken appointed Tippecanoe

---

[2] The parties disagree whether a legally binding contract was formed, but the court needn't decide that issue for purposes of summary judgment.

as an "authorized" sub-distributor, but in both a Primary Source Registration report and a letter to Indiana's Alcohol Beverage Commission, Heineken acknowledged that Tippecanoe was one of its Indiana sub-distributors selling Heineken products.[3] In any event, Tippecanoe has continued to wholesale Heineken products, and before 2002, neither Heineken nor its corporate predecessor advised Tippecanoe that it was no longer authorized to wholesale Heineken brands.

Correspondence between Tippecanoe and Heineken also reflects the business relationship of importer/sub-distributor wholesaler. In a series of letters from Mr. Sperka to Mr. Greski, Heineken asked that Tippecanoe provide monthly inventory reports, information on new retail accounts that Tippecanoe was developing to carry Heineken products, and a distributor profile containing, among other things, Tippecanoe's sales territory and a list of Tippecanoe's direct distributors. Heineken told Tippecanoe of products that were being discontinued and of new products Heineken was introducing into the market. Heineken also

---

[3] Whether Glanville Reed's — Heineken's Manager of Distributor Network Development — testimony is that Heineken appointed Tippecanoe as an authorized sub-distributor is unclear. In an April 13, 2005 deposition, Mr. Reed was asked about two documents — a Primary Source Registration report submitted to Indiana's Alcohol Beverage Commission and a letter to the Indiana Alcohol Beverage Commission — and in at least three instances, Mr. Reed acknowledged that those documents evidence Heineken's appointment of Tippecanoe as an authorized subdistributor of Heineken product in the 1980s (Transcript of Deposition of Glanville Reed 65:18-23l; 69: 21-24; 72: 1-4). In all three instances, though, Mr. Reed changed his answer through errata sheets. Tippecanoe maintains that Heineken's improper use of errata sheets creates a question of fact regarding the ultimate issue — whether there was an enforceable contract — precluding summary judgment. Heineken responds that Mr. Reed's changes are consistent with his deposition testimony, and that even if the court concludes that they evidence a factual dispute, the disputed fact isn't dispositive. The court need not consider Mr. Reed's testimony on this point since such testimony addresses the existence of a contract, and as discussed below, is not considered in granting summary judgment.

asked that a Tippecanoe salesperson oversee a Heineken-sponsored promotional event.

Until 2002, an administrative rule known as Rule 28 prohibited companies from restricting the sale of their beer to certain wholesalers or to certain geographic areas. Barco Beverage Corp. v. Indiana Alcoholic Beverage Comm'n, 595 N.E.2d 250, 253 (Ind.1992); 905 IAC 1-281(3). As a result of the sunset of Rule 28, exclusive beer distributorship territories are no longer forbidden in Indiana. Little Beverage Co., Inc. v. DePrez, 777 N.E.2d 74, 77 (Ind. App. 2002). Heineken maintains it made the business decision to restrict the sale of its products to certain wholesalers and despite its relationship with Tippecanoe, Tippecanoe wasn't assigned a territory when Heineken assigned a number of its wholesalers exclusive territories. In July 2002, Heineken instructed its direct distributors to sell no more Heineken products to Tippecanoe. Tippecanoe has been unable to wholesale Heineken products since then.

DISCUSSION

When this action was commenced,[4] Indiana's Beer Wholesaler Protection Statute provided in relevant part:

> It is unlawful for a beer wholesaler or a brewer in this state, or a brewer or other person located outside this state who sells beer to a permittee in this state for the purpose of importation and resale within this state to:
>
> * * *
>
> (2) cancel or terminate an agreement or contract between a beer wholesaler and a brewer for the sale of beer unfairly, and without due regard for the equities of the other party.

IND. CODE § 7.1-5-5-9. Interpretation of a statute is a question of law for the court and so an appropriate subject for disposition by way of summary judgment. FED. R. CIV. P. 56; Masters v. Hesston Corp., 291 F.3d 985, 989 (7th Cir. 2002). Heineken contends that Tippecanoe's claim for unlawful termination must fail because Heineken's status as a brewer makes Indiana's Beer Wholesaler Protection Statute inapplicable. Tippecanoe contends that the Beer Wholesaler Protection Statute applies not only to contracts between wholesalers and brewers, but also to contracts between wholesalers and importers like Heineken, because a contrary interpretation leads to an absurd result and undermines the statute's purpose. The court cannot agree with Tippecanoe's contention.

---

[4] Indiana Code § 7.1-5-5-9 was amended in 2005 to provide in relevant part:
> It is unlawful for a beer wholesaler or a primary source of supply to...
> (2) cancel or terminate an agreement or contract between a beer wholesaler and a primary source of supply for the sale of beer, unfairly and without due regard for the equities of the other party.

The court finds nothing to indicate that the General Assembly intended, or any compelling reason argued otherwise, to apply the amendment retrospectively. As such, the court applies the law as it existed at the commencement of this action. See IDEM v. Medical Disposal Servs., Inc., 729 N.E.2d 577, 581 (Ind. 2000); Bourbon Mini-Mart, Inc. v. Gast Fuel and Services, Inc., 783 N.E.2d 253, 260-261 (Ind. 2003).

A federal court applying a state statute is bound by the construction given a statute by the highest court within the state. Schad v. Borough of Mount Ephraim, 452 U.S. 61, 65 (1981). Legislative intent is a matter of state law on which the highest court in the state speaks with finality. Exxon Corp. v. Eagerton, 462 U.S. 176, 181 n.3 (1983). The single case in which the Indiana Supreme Court has interpreted the Beer Wholesaler Protection Statute provides little guidance since it involved a contract between a brewer and a wholesaler. *See* Miller Brewing v. Best Beers, 608 N.E.2d 975, 980 (Ind. 1993). Thus, the court applies Indiana's rules of statutory construction in interpreting the Beer Wholesaler Protection Statute. Karlin v. Foust, 188 F.3d 446, 457 (7th Cir. 1999).

When a statute's language is unambiguous, the court presumes words appearing in the statute were intended to have meaning, and strives to give those words their plain and ordinary meaning. Citizens Financial Services, FSB v. Innsbrook Country Club, Inc., 833 N.E.2d 1045, 1054 (Ind. App. 2005). Using the plain and ordinary meaning of "brewer" and "importer", the statute is unambiguous on its face. A brewer — one that manufactures brewed beverages — and a importer — one whose business is the importation and sale of goods from another country — are separate and distinct entities within the distribution process and are not interchangeable. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 275 and 1135 (1981) (unabridged). The statute isn't susceptible to multiple constructions that would demand additional judicial construction. Because the statute is unambiguous, it must be held to mean what it plainly

7

expresses, and the court must give the language a literal interpretation so as to carry the statute into effect without limiting its extent or extending its operation. Burks v. Bolerjack, 427 N.E.2d 887, 889-890 (Ind.1981); *accord*, In re Whyte,164 B.R. 976, 983 (Bankr. N.D. Ind. 1993).

Tippecanoe says that a strict interpretation undermines the statute's purpose and creates an absurd result since there is no logical reason to protect the wholesaler who deals with a brewer, but not protect the wholesaler who happens to deal with an importer. In passing the Beer Wholesaler Protection Statute, the General Assembly was concerned with protecting the economic welfare of the people of Indiana by avoiding the waste of resources from contract termination, Miller Brewing v. Best Beers, 608 N.E.2d at 980; choosing to protect only certain contracts is consistent with this goal. The General Assembly's choice to protect only contracts with brewers produces no absurd result requiring judicial modification. *See* Jaskolski v. Daniels 427 F.3d 456, 463 (7th Cir. 2005) ("anti-absurdity" doctrine doesn't license courts to improve statutes substantively so that their outcomes accord more closely with judicial beliefs about how matters ought to be resolved). Many distribution contracts, such as contracts between direct distributors and sub-distributors, whose termination is arguably wasteful, find no protection under this statute, but that provides no authorization to read language into the statute simply because the legislature might have intended to do so. Lamie v. U.S. Trustee, 540 U.S. 526, 534-537 (2004). To do so would be inconsistent with the Indiana courts' handling of Indiana laws. Lubricant

8

Consultants, Inc. v. Indiana Dept. of State Revenue, 621 N.E.2d 677, 680 (Ind. Tax Ct. 1993) (court may not invade the domain of the legislature to expand or contradict the meaning of a statute by reading into it language to correct supposed omissions or defects). The General Assembly could have extended contractual protection to wholesaler/importer contracts by including the words "importer," or "primary source of supply," but it chose not to do so. See Hammons v. Jenkins-Griffith, 764 N.E.2d 303, 305 (Ind. Ct. App. 2002) ("The specific inclusion of one entity usually precludes the implication of another entity's inclusion in the same statutory provision").

Tippecanoe also argues that the recent amendment to IND. CODE § 7.1-5-5-9 indicates the General Assembly's original intent to include protection to wholesalers who enter into contracts with brewers, importers, or any other type of beer distribution company. In 2005, IND. CODE § 7.1-5-5-9 was amended to make it prohibit termination of an agreement or contract between a beer wholesaler and a primary source of supply for the sale of beer, unfairly and without due regard for the equities of the other party. Primary source is defined to include "an importer into the United States of the alcoholic beverage," such as Heineken, as well as "a brewer of the alcoholic beverage." IND. CODE § 7.1-1-3-32.5 (2005).

An amendment to a statute is presumed to change the law, but this presumption is overcome if it clearly appears that the amendment was passed to express the intent more clearly. Bourbon Mini Mart, Inc. v. Commissioner, Indiana

9

Dept. of Environmental Management, 806 N.E.2d 14, 21 (Ind. App. 2004); Security Trust Corp. v. Estate of Fisher, 797 N.E.2d 789, 793-794 (Ind. App. 2003). Tippecanoe contends that the statute's purpose can only be accomplished by protecting both brewers and importers, so the new expansive language to include both demonstrates that the amendment was intended to express the original intent. In support of its argument, Tippecanoe cites United Nat'l Ins. Co. v. DePrizio, 705 N.E.2d 455, 460 (Ind. 1999), in which the Indiana Supreme Court found the statutory evolution of the Uninsured Motorist Act indicative of the General Assembly's intent to provide full recovery for victims of irresponsible motorists, and decided that interpreting the act as not requiring umbrella insurance to provide uninsured coverage would contravene this intent. The court is unpersuaded. Unlike the statute in DePrizio, the Beer Wholesaler Protection Statute did not clearly contravene its purpose as originally written. There is no history of expanding protection through multiple amendments to indicate an intent otherwise. If anything, the recent amendment demonstrates that the General Assembly knew how to include importers as a contractual party subject to statute, yet previously chose not to do so. Tippecanoe has not persuaded the court that the recent amendment was a change in the law.

## CONCLUSION

Heineken is not subject to the Beer Wholesaler Protection Statute, so Tippecanoe's claim for wrongful termination fails as a matter of law. The Court

GRANTS the defendant's motion for summary judgment [Docket No. 58]. Heineken has also filed a motion to strike portions of the summary judgment record designated by Tippecanoe in it response. The court DENIES Heineken's motion [Docket No. 59] as moot since Heineken is entitled to summary judgment even when the court considered all the evidence submitted by Tippecanoe.

SO ORDERED.

Entered: <u>November 29, 2005</u>

<u>   /s/ Robert L. Miller, Jr.   </u>
Chief Judge
United States District Court
